# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GREGORY HOLLIDAY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALBION LABORATORIES, INC., VITACOST.COM, INC., DRVITA, INC., and JOHN DOES 1 through 50,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Gregory Holliday, by and through his undersigned counsel, respectfully files this Class Action Complaint on behalf of himself and a class of similarly situated individuals who purchased, indirectly from Albion Laboratories, Inc., and directly from Vitacost.com, Inc., DrVita, Inc. and John Does 1 through 50 ("Defendants"), a blended form of magnesium glycinate and magnesium oxide known as Magnesium Bisglycinate Chelate Buffered, in which magnesium oxide is not listed in the supplement facts panel on the label, in contravention of the law.

## NATURE OF THE CASE

1.     As consumers have become increasingly health conscious, dietary supplements have become a multi-billion dollar industry.  To navigate the vast array of vitamin and mineral products available on the market today, consumers rely on honest and accurate labels. Unfortunately, some companies attempt to maximize their profits by mislabeling their supplements in order to trick consumers into paying a price premium for an inferior product.

{00267981 }

Defendants are such companies.

2.      Defendants sell a magnesium supplement that contains two kinds of magnesium: magnesium glycinate ("Glycinate") and magnesium oxide ("Oxide").  It is well-known that Glycinate is superior to Oxide because it is a "chelated" magnesium, which is more easily absorbed into the body and causes fewer negative side effects.  Accordingly, the wholesale and retail prices for Glycinate are higher than for Oxide.

3.      In an effort to cut costs while maintaining demand, Albion blends Glycinate with Oxide (the "Blended Product") and sells it to the other named Defendants ("re-sellers"), who do not list the inferior magnesium, Oxide, anywhere on their Blended Product labels.  They do, however, list the superior magnesium, Glycinate, as the only magnesium ingredient in the "Supplement Facts" panel on their Blended Product labels.  This enables the re-sellers to charge a price premium for their Blended Product by charging the same price as would be charged for pure Glycinate.

4.      Under the false impression that Defendants' Blended Products are pure Glycinate, tens of thousands of consumers have paid a price premium for an inferior form of magnesium, thereby padding Defendants' pockets with undeserved profits.  This suit seeks redress on behalf of consumers who paid a price premium for the Blended Product under the reasonable, but mistaken, belief that it was pure Glycinate.

## PARTIES

5.      Plaintiff Gregory Holliday resides in Tarpin Springs, Florida, and is a Florida citizen.  Plaintiff is a combat veteran who suffers from anxiety and insomnia.  After reading about those conditions, Plaintiff learned that magnesium was one of the preferred holistic approaches for treatment.  Plaintiff purchased Vitacost Chelated Magnesium, as well as Nature's

Lab Magnesium Glycinate in 2014 within the state of Florida.  During that time, Plaintiff noticed little relief from his conditions.  Plaintiff did, however, experience mild cramping and diarrhea. After experiencing those after effects, Plaintiff conducted some research and determined that the products themselves were incorrectly labeled with the proper ingredients, in that they contained the inferior magnesium, Oxide.  Plaintiff immediately stopped taking the Blended Product.

6.      Were it not for Defendants' unfair and deceptive practices, Plaintiff and the Class members would not have purchased the Blended Product or paid a price premium to purchase it. If the Blended Product did in fact contain pure magnesium Glycinate, as promised, rather than also containing magnesium Oxide, Plaintiff would likely have continued to purchase the Blended Product and paid the price premium to purchase it.

7.      Defendant Albion Laboratories, Inc. ("Albion") is a corporation organized under the laws of the State of Utah, with its headquarters located at 101 North Main Street, Clearfield, Utah 84015.  Albion, therefore, is a citizen of Utah.  Albion manufactures and supplies mineral amino acid chelate nutrition to industries worldwide.  Pursuant to an agreement with its re-sellers, Albion was able to control, and did in fact control, the nature and content of the Blended Product's label.

8.      Defendant Vitacost.com, Inc. ("Vitacost") is a corporation organized under the laws of the State of Delaware.  Vitacost's headquarters are located at 5400 Broken Sound Parkway, Suite 500, Boca Raton, Florida 33487-3522.  Vitacost, therefore, is a citizen of Delaware and Florida.  Vitacost has marketed and sold nutrition supplements, including the Blended Product, worldwide.

9.      Defendant DrVita, Inc. ("DrVita") isa corporation organized under the laws of the State of Delaware.  On information and belief,  DrVita operates, *inter* alia, through the trade

name of DrVita.com.  DrVita's headquarters are located at 6980 West Warm Springs Road, Suite

100, Las Vegas, Nevada.  DrVita, therefore, is a citizen of Delaware and Nevada.  DrVita has

marketed and sold nutrition supplements, including the Blended Product, worldwide.

10.     Defendants John Does 1 through 50 are companies whose names are presently

unknown to Plaintiff, but are believed to have marketed and sold nutrition supplements,

including the Blended Product, worldwide.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the Class Action Fairness

Act of 2005, under 28 U.S.C. § 1332(d).  Jurisdiction is proper because: (1) the matter in

controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs; (2) the

named Plaintiff and the Defendants are citizens of different states; and (3) the proposed class has

more than 100 members.  28 U.S.C. § 1332(d)(2), (5)(B).

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

part of the events giving rise to the claim occurred within this judicial district and because

Defendants have marketed and sold the Blended Product at issue in this action within this

judicial district and have done business within this judicial district.

## GENERAL ALLEGATIONS

13.     Consumers are increasingly health conscious and often rely on vitamin and

mineral supplements to promote health and prevent disease.  A multibillion dollar industry,

nutrition supplements have become a mainstay of the American diet and lifestyle.  However,

because most supplements are over-the-counter, and particularly in the era of self-diagnosis on

the Internet, consumers depend on the accuracy and honesty of labels so they can make informed

decisions about which products to purchase for their health needs.

14.     Magnesium has become one of the best-selling minerals on the market, as studies show that a staggering 68% of Americans do not consume the recommended daily intake of magnesium.  Magnesium is critical to a wide variety of essential bodily functions, including protein synthesis, muscle and nerve function, bone development, blood glucose control, and blood pressure regulation.  Magnesium deficiencies have also been linked to insomnia. Magnesium supplements are therefore growing in popularity as consumers learn about the consequences of a deficiency in this essential mineral.

15.     Because magnesium must be combined with another substance to absorb into the body properly, there are numerous types of magnesium supplements.  The types of magnesium supplements are defined by the substances with which the magnesium is combined, and include: glycinate, malate, citrate, threonate, taurate, chloride or lactate, carbonate, sulfate or hydroxide, and oxide.  The greater the "bioavailability," the greater the absorption.

16.     Glycinate is one of the most bioavailable forms of magnesium "and is typically ideal for those who are trying to correct a deficiency."[1]  Oxide, by contrast, is one of the least bioavailable forms of magnesium and has an unpleasant laxative effect.[2]  One study found that Oxide only has a 4% absorption rate.[3]  Another found that Glycinate has a more immediate and higher overall absorption rate in, and is better tolerated by, patients who have difficulty

---

[1] http://articles.mercola.com/sites/articles/archive/2012/12/17/magnesium-benefits.aspx; *see also* http://www.huffingtonpost.com/dr-mark-hyman/magnesium-the-most-powerf_b_425499.html (recommending Mg citrate, glycinate, taurate, or aspartate).

[2] http://www.emed.com.au/nutrition/vitamin-mineral-info/magnesium/not-all-magnesium-supplements-are-the-same/ http://www.emed.com.au/3438 (explaining that Mg oxide is used as a laxative).

[3] Firoz M, Graber M. (2001) Bioavailability of US commercial magnesium preparations. Magnesium Research. 14(4):257-62.

absorbing and retaining magnesium.[4]  The University of Kansas Medical Center clearly states:

"Magnesium oxide is poorly absorbed, and hence likely to cause diarrhea.  We do not

recommend magnesium oxide."[5]

17.    Livestrong.com also recommends magnesium Glycinate over magnesium Oxide:

If you are suffering from a magnesium deficiency, magnesium glycinate or other forms of chelated magnesium may be your best bet because they are so well absorbed, says Carolyn Dean, author of "The Magnesium Miracle."  Your body may tolerate magnesium glycinate better than magnesium oxide, which is commonly used for this purpose, notes Donald Goldberg, lead author for "The Best Supplement for Your Health."[6]

18.    Dr. Andrew Weil, a well-known naturopath, recommends Glycinate over Oxide.[7]

19.    Even Albion's own studies, which are readily available on the Internet, promote

the superiority of Glycinate as compared to Oxide, as the following illustrates:

---

[4] Schuette S.A. et al. (1994) Bioavailability of magnesium diglycinate vs magnesium oxide in patients with ileal resection.  J Parenter Enteral Nutr. 18(5):430-5.

[5] http://www.kumc.edu/school-of-medicine/integrative-medicine/the-benefits-of-magnesium.html.

[6] http://www.livestrong.com/article/271338-what-are-the-benefits-of-magnesium-glycinate/.

[7] http://www.drweil.com/drw/u/ART02805/magnesium.html (Dr. Weil recommends "magnesium citrate, chelate, or glycinate, and avoid magnesium oxide, which can be irritating to the digestive tract").



20.     Unsurprisingly, consumers believe Glycinate is superior to Oxide.  This is demonstrated by numerous blog posts espousing Glycinate over Oxide.  For example, in an online forum with a blog post entitled "Bulletproof Magnesium Thread," a member wrote: "Magnesium Glycinate – The most bioavailable form of Magnesium …… Least likely to cause loose stools" and "Magnesium Oxide – VERY POORLY ABSORBED – out of 400 mg only AT MOST 80 mg of magnesium absorbed by the body.  The worst form of magnesium."[8]  In another blog post on MedHelp.org, a member wrote that Glycinate is one of the best forms of magnesium and that "Chelated magnesium [which includes Glycinate] is far better absorbed than magnesium oxide . . . ."[9]

21.     In part due to this increased consumer awareness and demand for Glycinate, Glycinate is significantly more expensive than Oxide.  As noted by the Huffington Post, Oxide is one of "the cheapest and most common forms [of magnesium] found in supplements."[10]  For

---

[8] http://forum.bulletproofexec.com/index.php?/topic/2078-bulletproof-magnesium-thread/.

[9] http://www.medhelp.org/posts/Heart-Rhythm/Magnesium-supplements----to-avoid---how-to-take-it-and--safety/show/1002415.

[10] http://www.huffingtonpost.com/dr-mark-hyman/magnesium-the-most-powerf_b_425499.html ("Avoid magnesium carbonate, sulfate, gluconate, and oxide.  They are poorly absorbed (and the cheapest and most common forms found in supplements).").

example, Solaray, a supplement retailer, offers Glycinate for $12.98 per bottle, which contains 120 capsules and 400 milligrams ("mg") per serving (where each serving is four capsules).  This computes to $0.11/capsule or $0.001/mg.  By contrast, Nature Made, another supplement retailer, offers Oxide for $2.97 per bottle, which contains 100 capsules and 250 mg per serving (where each serving is one capsule).  This calculates to $0.03/capsule or $0.0001/mg.  Therefore, as between these two retailers, Glycinate costs *ten times* more per mg than Oxide.

22.     In addition to increased consumer demand, Glycinate is also more expensive because it is more costly to manufacture.  Glycinate is a "chelated" form of magnesium, which means it is combined with another substance to increase absorption and bioavailability.  To chelate its Glycinate, Albion uses a six-stage chelation process described in a promotional video on Albion's homepage.[11]  The machinery and expertise required to manufacture Glycinate are very expensive.  Oxide is not chelated, and is therefore far less costly to manufacture.

23.     To reduce these costs while maintaining consumer demand, Albion blended Oxide with Glycinate, in some cases not informing its re-sellers that it had done so.  Albion's Product Data Sheet[12] lists Glycinate and Oxide as ingredients.  Yet the labeling on Defendants' final products—labeling that is orchestrated and controlled by Albion—lists Glycinate, but entirely omits Oxide, as follows:

---

[11] http://www.albionminerals.com/

[12] *See* Exhibit "A," annexed.



| Supplement Facts | | |
|---|---|---|
| Serving Size: 1 Capsule | | |
| Servings per Container: 180 | | |
| | Amount Per Serving | % Daily Value |
| Magnesium (as TRAACS® magnesium glycinate chelate buffered) | 133 mg | 33% |
| Proprietary Blend | 55 mg | |
| Short Chain Fructooligosaccharides (FOS) NutraFlora® scFOS® | | * |
| Ginger Root Extract (Zingiber officinale) (Standardized for 5% gingerols) | | * |
| Black Pepper Powder (piper nigrum) (fruit) | | * |
| Long Pepper Powder (piper longum) (fruit) | | * |
| Multi-Enzyme Complex (amylase, fungal lactase, protease, lipase, cellulase) DigeZyme® | | * |
| *Daily value not established. | | |

*Other Ingredients: Gelatin (capsule), magnesium stearate (vegetable source) and rice flour.*

NutraFlora  NutraFlora® is a registered trademark of GTC Nutrition LLC, Golden, Colorado.

**Warnings**
Pregnant or lactating women, diabetics, hypoglycemics, and people with known medical conditions and/or taking drugs should consult with a licensed physician and/or pharmacist prior to taking dietary supplements. Keep out of reach of children.



| Supplement Facts | | |
|---|---|---|
| Serving Size: 4 Capsules | Servings Per Container: 30 | |
| | Amount Per Serving | % DV |
| Magnesium (as TRAACS® buffered magnesium glycinate chelate) | 400 mg | 100% |
| *Daily Value not established | | |

Such deceptive labeling leads a reasonable consumer to believe that the Blended Product is Glycinate, when in fact it is blended with an inferior form of magnesium, Oxide.

24.     Like other members of the Class, Plaintiff purchased the Blended Product believing it to have the qualities he sought (pure Glycinate), based on the unlawful and deceptive misrepresentations of Defendants.

25.     Instead of receiving a product that has the advantages of pure Glycinate, Plaintiff

9

and members of the Class received a Blended Product containing both Glycinate and the inferior Oxide.

26.     The Blended Product was worth less than what Plaintiff and members of the Class paid for it, and Plaintiff and members of the Class lost monies as a result of Defendants' deception, in that they did not receive what they paid for.

27.     Defendants therefore earn a substantial additional profit by knowingly and intentionally misleading consumers into believing that the Blended Product is pure Glycinate.

28.     Moreover, Defendants' deceptive labeling practice defies the FDA's explicit instructions.  A federal regulation, 21 C.F.R. § 101.36, covers nutrition labeling of dietary supplements and provides that "the label of a dietary supplement that is offered for sale shall bear nutrition labeling in accordance with this regulation unless an exemption is provided for the product in paragraph (h) of this section."  21 C.F.R. § 101.36(a).  Defendants are not exempt under 21 C.F.R. § 101.36(h)(3).

29.     Defendants must abide by the labeling requirements set forth in 21 C.F.R. § 101.36.  Specifically, Section 101.36(b)(2) applies to dietary ingredients and its subcomponents that have a "Reference Daily Intake" or "Daily Reference Value" under Section 101.9(c). Magnesium's daily reference value is readily available online:

| AGE | MALE | FEMALE |
| --- | --- | --- |
| 1–3 | 80 mg | 80 mg |
| 4–8 | 130 mg | 130 mg |
| 9–13 | 240 mg | 240 mg |
| 14–18 | 410 mg | 360 mg (400 mg during pregnancy) |
| 19–30 | 400 mg | 310 mg (350 mg during pregnancy) |
| 31+ | 420 mg | 320 mg |

10

Section 101.9(c)(8)(iv) also includes magnesium as one of the minerals that is "essential" to human nutrition, and magnesium is explicitly referenced in Section 101.36(b)(2)(B).  Section 101.36(b)(2) therefore applies to Defendants, and requires such magnesium to be declared "when [it is] added to the product for purposes of supplementation, or when a claim is made about [it]."  Because Oxide is added to the Blended Product for purposes of supplementation and claims about nutrient content and health are made about it, the Oxide in the Blended Product must be declared.

30.     Although Defendants list magnesium, they only list Glycinate, and not Oxide.  This violates Section 101.36(d), which requires "source ingredients" to be disclosed either in the nutrition label or "outside and immediately below the nutrition label."  Further, "[w]hen source ingredients are listed within the nutrition label, and two or more are used to provide a single dietary ingredient, all of the sources shall be listed within the parentheses in descending order by weight."  21 C.F.R. § 101.36(d)(2).

31.     Glycinate and Oxide are source ingredients.  Therefore, not only must Defendants disclose the Oxide contained in the Blended Product, they must also list the respective weights, in terms of milligrams, of the Glycinate and Oxide.  Dietary Supplement Health and Education Act of 1994, Pub. L. No. 103–417, § 7, 108 Stat. 4325 (1994) (codified as 21 U.S.C. § 343(q)(5)(F)).

32.     Even if the Blended Product were deemed a "proprietary blend," pursuant to Section 101.36(c)(2), each ingredient must nevertheless be listed in descending order of predominance by weight, in accordance with Section 101.36(b)(3).  Thus, Defendants may not circumvent the FDA's disclosure requirements by simply calling the Blended Product "proprietary"; nor can Defendants circumvent state consumer protection law by falsely

representing the Blended Product.  In fact, Albion must be aware of this disclosure requirement, as it discloses all of the ingredients of a proprietary blend contained in a prostate health supplement called Natural Prostate Health, for which Albion supplies some of the underlying ingredients, as the following image of Natural Prostate Health's Supplement Facts panel illustrates[13]:

```
Supplement  Facts
Serving Size: 2 Capsules
Servings Per Container: 30
_____
                           Amount Per Serving    % DV*
Zinc                            15 mg      100%
Selenium                        25 mcg      36%
_____
Proprietary Blend              2,000 mg       †
    Saw Palmetto Fruit Extract
    Beta-Sitosterol with Phytosterols
    Pygeum Africanum Bark Extract
    Cranberry Extract
    Stinging Nettle Root Extract
    Grape Seed Extract
    Evening Primrose Seed Oil (for GLA, ALA, PLA)
    Pumpkin Seed Oil
_____
* Percent Daily Value (DV) is based on a 2000 calorie diet.
† Daily Value not established.
```

Defendants therefore knowingly and intentionally hide the fact that the Blended Product contains Oxide so they can turn an additional profit at the consumer's expense.

33.     Plaintiff conducted additional research on the Blended Product and discovered that Swanson Health Products was the only company that discloses the fact that its similar product contains Oxide, and only in the "other ingredients" section below the more prominent Supplement Facts panel, which lists Glycinate.  *See* Swanson Ultra Albion Chelated Magnesium Glycinate Supplement Facts below:

---

[13] http://shop.enivausa.com/487786/en-us/product.aspx?id=26005.

12

# Supplement Facts

Serving Size 1 Capsule

|  | Amount Per Serving | % Daily Value |
|---|---|---|
| Magnesium (from TRAACS®magnesium glycinate chelate buffered) | 133 mg | 33% |

Other ingredients: Gelatin, magnesium oxide, citric acid, maltodextrin, may contain one or more of the following: microcrystalline cellulose (plant fiber), magnesium stearate, silica.

34.     Albion dictates the labeling to its re-sellers by way of a "Trademark and Patent Number License Agreement."[14]  Integrated Supplements, an Albion re-seller which purchased the Blended Product from Albion and sold it to the public as Integrated Supplements Bio-Available Magnesium stated:

> * * * Where we source our raw materials from Albion Nutrition (and are proud to do so), we label all ingredients in strict accordance with the requirements legally set forth by Albion Nutrition.  If we didn't label our product exactly as Albion dictates, we simply couldn't advertise the fact that we use their ingredients.

35.     In the comments section of a review of Integrated Supplements Bio-Available Magnesium, Integrated's representative stated:

> As I stated previously, I cannot speak for other companies (or speculate as to the reasons for their actions), but I will, again, speak the truth.  Albion, did review, direct, and approve the current content of our label, with instructions to label the ingredient in question as TRAACS® Magnesium Glycinate Chelate Buffered. There is also a contract in place between us which governs all Albion trademarks and descriptions.  I am not "hiding behind them" or "shifting the blame."  These are simply the facts (for which I have documentation).  Where we labeled the ingredient exactly as they stated, and exactly as many (but perhaps not all) other brands do, there was never any attempt whatsoever to mislead.  They are the trademark holder on the ingredient, so I think it was reasonable of us to assume that the descriptions they instructed us to use were legally allowed (especially

---

[14] *See* Exhibit "B," annexed.

considering the numerous other brands that used the same ingredient, and labeled it the exact same way).  Again, if this proves to be an incorrect assumption, we, with Albion, will rectify it.

If changes are required, they won't just affect us, but MANY products which contain the ingredient.  If you truly want to bring about change in this area, we're small potatoes – I'd recommend you go right to the source and try and appeal to Albion, themselves.  Again, I stand behind everything I've said regarding Albion. I have the email correspondences and contracts to support my statements regarding their labeling requirements, and more importantly, I want to reiterate, again, that we proudly use their ingredients. * * *[15]

36.     Another re-seller, Nuvari Life, acknowledged that Oxide should have been listed as an ingredient in its Blended Product and apologized for the mislabeling.  Nuvari Life, a re-seller of Nuvari Magnesium Ultra, stated on its product page on Amazon:

We have conducted further research into this matter and have spoken further with our supplier and Albion.  It appears that our supplier failed to list the following other ingredients in the supplement facts provided for our label: magnesium oxide, citric acid, maltodextrin, silica.  These ingredients are part of the formula manufactured by Albion.  They are not added in afterwards by our supplier. Nevertheless, it is required that they appear in the ingredients.  We are very disappointed to learn that our labeling is incorrect.  We will be closing our Amazon listing this week in order to have our product relabeled and the ingredients listed properly.[16]

37.     It is therefore apparent that Albion exercises direction and control over the Blended Product's labeling, and either explicitly or implicitly instructs its retailers not to disclose Oxide.

38.     Such deceptive labeling leads a reasonable consumer to believe that the Blended

---

[15] *See*
http://www.amazon.com/review/R31ZRZQWOWX7V0/ref=cm_cd_pg_pg2?ie=UTF8&asin=B0 03OETP6O&cdForum=Fx3VV3F9TK53FX7&cdPage=2&cdThread=Tx1IUG45A0HOCEY&st ore=hpc#wasThisHelpful.http://www.amazon.com/review/R31ZRZQWOWX7V0/ref=cm_cr_pr _perm?ie=UTF8&ASIN=B003OETP6O.

[16] *See* Exhibit "C," annexed.

Product is pure Glycinate, when in fact it is blended with an inferior form of magnesium.  Like other members of the Class, Plaintiff purchased the Blended Product believing it to have the qualities he sought (pure Glycinate), based on the unlawful and deceptive misrepresentations of Defendants.  Instead of receiving a Blended Product that has the advantages of pure Glycinate, Plaintiff and members of the Class received a product containing both Glycinate and the inferior Oxide.  Defendants' Blended Product was worth less than what Plaintiff and members of the Class paid for it, and Plaintiff and members of the Class lost monies as a result of Defendants' deception in that they did not receive what they paid for.  Defendants therefore earn a substantial additional profit by knowingly and intentionally misleading consumers into believing that the Blended Product is pure Glycinate.

39.     Notwithstanding Albion's directives to its re-sellers, Defendant re-sellers are required to abide by the FDA regulations set forth above, and to not circumvent state consumer protection laws.  Defendant re-sellers could and should have resisted Albion's instructions by either listing Oxide as an ingredient on the Supplement Facts Panel, or refusing to purchase from Albion the Blended Product.

40.     Defendant re-sellers therefore cannot claim innocence; by only listing "Magnesium Glycinate" as an ingredient on the Supplement Facts panel and failing to disclose Oxide as an ingredient, Defendant re-sellers were able to charge an unwarranted price premium for an adulterated product.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action on his own behalf and, pursuant to Federal Rule of Civil Procedure 23, on behalf of a class of all persons who, during the period from 2008 through present, purchased the Blended Product (the "Class").  Excluded from the Class are Defendants

and any parent, subsidiary, or affiliate of Defendants.

42.　Plaintiff brings this action as a class action for the following reasons:

A.　The Class consists of tens of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

B.　There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

i.　Whether Defendants violated the provisions of law set forth in the causes of action below;

ii.　The wholesale and retail prices of the Blended Product, Magnesium Glycinate, and Magnesium Oxide;

iii.　The cost of manufacturing the Blended Product, Magnesium Glycinate, and Magnesium Oxide;

iv.　Whether a reasonable consumer would believe that the Blended Product contains Magnesium Glycinate without Magnesium Oxide;

v.　Whether Albion required Defendant re-sellers to include Magnesium Glycinate, and to exclude Magnesium Oxide, from the Blended Product's labeling;

vi.　Whether Defendants knew the Blended Product was mislabeled;

vii.　Whether Defendants knowingly deceived consumers;

viii.　Whether Defendants intentionally deceived consumers;

ix.　Whether Defendants' labeling and pricing scheme constitutes an unfair method of competition;

16

x.      Whether Defendants' labeling and pricing scheme is an unconscionable act or practice;

xi.      Whether Defendants' labeling and pricing scheme is an unfair or deceptive act or practice;

xii.      Whether Defendants have been unjustly enriched by their labeling and pricing scheme;

xiii.      Whether Defendants should be enjoined from continuing their labeling and pricing scheme;

C.      The claims asserted by Plaintiff are typical of the claims of the members of the Class;

D.      Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including class action litigation involving state statutes protecting consumers from deceptive and unfair trade practices;

E.      Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants;

F.      Defendants have acted on grounds that apply generally to the Class, *i.e.*, mislabeling and charging an unjustifiable price premium for the Blended Product, so that final injunctive relief prohibiting Defendants from continuing their unfair and deceptive practice is appropriate with respect to the Class as a whole; and

G.  A class action is superior to other available methods for the fair and

efficient adjudication of the controversy, for at least the following reasons:

i.  Absent a class action, Class members as a practical matter will be

unable to obtain redress; Defendants' violations will continue without remedy;

additional consumers will be harmed; and Defendants will continue to reap and

retain their ill-gotten gains;

ii.  It would be a substantial hardship for most individual members of

the Class if they were forced to prosecute individual actions;

iii.  When the liability of Defendants has been adjudicated, the Court

will be able to determine the claims of all members of the Class;

iv.  A class action will permit an orderly and expeditious

administration of Class claims and foster economies of time, effort, and expense;

v.  The lawsuit presents no difficulties that would impede its

management by the Court as a class action; and

vi.  Defendants have acted on grounds generally applicable to Class

members, making Class-wide monetary and injunctive relief appropriate.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Violation of the Florida Deceptive and Unfair Trade Practices Act,
F.S.A. § 501.204 *et seq.*)**

43.  Plaintiff repeats and re-alleges the allegations contained above as if fully set forth

herein.

44.  The elements to state a claim under the Florida Deceptive and Unfair Trade

Practices Act ("FDUTPA") are (1) a deceptive act or unfair practice, (2) causation, and (3) actual

damages.

45.     Defendants' labeling and pricing scheme constitutes a deceptive act because it is a representation, omission, or practice that that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment.  Defendants represent that the Product contains Magnesium Glycinate but omit the fact that it also contains Magnesium Oxide.  This mislabeling practice is likely to mislead a consumer acting reasonably under the circumstances into believing that the Product is pure Magnesium Glycinate.  As a result of this reasonable but erroneous belief, tens of thousands of consumers have paid and continue to pay an unjustified price premium for Defendants' Product.

46.     Defendants' labeling and pricing scheme constitutes an unfair practice because it offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  By representing that the Product contains pure Magnesium Glycinate without Magnesium Oxide, Defendants charge an immoral, unethical, oppressive, and unscrupulous price premium that is substantially injurious to consumers.

47.     As a direct and proximate result of Defendants' deceptive acts and unfair practices, Plaintiff and the Class paid a price premium for an inferior product.  It was reasonably foreseeable that the Product label would lead a reasonable consumer to believe that the Product contains pure Glycinate, and that such a consumer would unknowingly pay a price premium for the Product even though it is less expensive to manufacture, has a greater laxative effect, and has lower bioavailability than pure Magnesium Glycinate.

48.     Consumers suffered actual damages because they paid the fair market price for pure Magnesium Glycinate when the Product they purchased contained both Magnesium Glycinate and Magnesium Oxide, the latter of which is a less expensive and inferior form of

Magnesium.

49.     The above-described deceptive acts and unfair practices by Defendants present an ongoing threat to the Class.  Plaintiff is informed and believes and thereon alleges that Defendants have systematically perpetrated deceptive acts and unfair practices upon members of the public and have knowingly and intentionally misled Plaintiff and members of the Class.

**SECOND CAUSE OF ACTION**
**(Breach of Express Warranty under Florida Common Law)**

50.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

51.     Plaintiff brings this claim on behalf of himself and on behalf of the Class members for breach of express warranty under the common law of the State of Florida.

52.     Defendants provided Plaintiff and the Class members with written express warranties, including but not limited to warranties that the Blended Products contained only magnesium Glycinate, as set forth above.

53.     Defendants breached these warranties by providing Blended Products that contained both magnesium Glycinate and the significantly inferior, cheaper magnesium Oxide and that otherwise failed to conform to Defendants' express warranties.

54.     This breach resulted in damages to Plaintiff and the Class members, who bought Defendants' Blended Products but did not receive the goods as warranted, in that the Blended Products did not contain only magnesium Glycinate as represented but, instead, contained both magnesium Glycinate and the significantly inferior, cheaper magnesium Oxide.

55.     As a proximate result of Defendants' breach of warranties, Plaintiff and the Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Blended Products that did not conform to what

Defendants promised in the Blended Product promotion, marketing, advertising, packaging, and labeling, and they were deprived of the benefit of their bargain and spent money on Blended Products that did not have any value or had less value than warranted or Blended Products that they would not have purchased and used had they known the true facts about them.

56.     Therefore, Plaintiff seeks relief as set forth below.

**THIRD CAUSE OF ACTION**
**(Violation of the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.*)**
**(Deceptive Acts or Practices by Suppliers)**
**(Against Defendant Albion Laboratories, Inc., Only)**

57.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

58.     Plaintiff brings this claim against defendant Albion Laboratories, Inc., only, on behalf of himself and on behalf of the Class members, for violation of the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.* (the "UCSPA").  Specifically, this claim alleges Albion violated several provisions of Utah Code section 13-11-4 by engaging in deceptive acts or practices.

59.     Under the UCSPA, "person" means "an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, cooperative, or any other legal entity."  Utah Code § 13-11-3(5).

60.     Plaintiff, the Class members, and Albion are "persons" as the UCSPA defines that term because Plaintiff and each of the Class members are individuals and Albion is a corporation, as set forth above.

61.     Under the UCSPA, "consumer transaction" means, inter alia, "a sale . . . of goods . . . to, or apparently to, a person for: (i) primarily personal, family, or household purposes[.]" *Id.* § 13-11-3(2)(a).

62.     Plaintiff and the Class members, on the one hand, and Albion, on the other, engaged in "consumer transactions" as the UCSPA defines that term because Plaintiff and the Class members bought the Blended Products for primarily personal, family, or household purposes.

63.     Under the UCSPA, "supplier" means "a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, whether or not he deals directly with the consumer." *Id.* § 13-11-3(6).

64.     Albion is a "supplier" as the UCSPA defines that term because it is a seller or other persons who regularly solicits, engages in, or enforces "consumer transactions," as the UCSPA defines that term.

65.     Under the UCSPA:

> [A] supplier commits a deceptive act or practice if the supplier knowingly or intentionally:
>
>> (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;
>>
>> (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;
>>
>> * * * * *
>>
>> (e) indicates that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not; [or]
>>
>> (j) . . . (ii) fails to honor a warranty or a particular warranty term[.]

*Id.* § 13-11-4(2)(a), (b), (e), (j)(ii).

66.     As fully alleged above, Albion has engaged, and Albion continues to engage, in

deceptive acts or practices in violation of Utah Code section 13-11-4(2)(a) because: (i) the Blended Products were the subject of consumer transactions between Plaintiff and the Class members and Albion, (ii) Albion represented that the Blended Products had performance characteristics and benefits that they did not have, since Albion labeled, marketed, and sold the Blended Products as containing only magnesium Glycinate when, in fact, the Blended Products contained a blend of magnesium Glycinate and magnesium Oxide (which is significantly inferior to and cheaper than Glycinate), and (iii) Albion knew or should have known that the Blended Products did not, in fact, contain only Glycinate and, instead, contained a blend of magnesium Glycinate and an inferior, cheaper ingredient, magnesium Oxide.

67.     As fully alleged above, Albion has engaged, and Albion continues to engage, in deceptive acts and practices in violation of Utah Code section 13-11-4(2)(b) because: (i) the Blended Products were the subject of consumer transactions between Plaintiff and the Class members and Albion, (ii) Albion represented that the Blended Products were of a particular standard, quality, or grade when they were not, since Albion labeled, marketed, and sold the Blended Products as containing only magnesium Glycinate when, in fact, the Blended Products contained a blend of Glycinate and Oxide (which is significantly inferior to and cheaper than Glycinate), and (iii) Albion knew or should have known that the Blended Products did not, in fact, contain only Glycinate and, instead, contained a blend of magnesium Glycinate and an inferior, cheaper ingredient, magnesium Oxide.

68.     As fully alleged above, Albion has engaged, and Albion continues to engage, in deceptive acts and practices in violation of Utah Code section 13-11-4(2)(e) because: (i) the Blended Products were the subject of consumer transactions between Plaintiff and the Class members and Albion, (ii) Albion represented that the Blended Products were supplied in

accordance with a previous representation when they were not, since Albion labeled, marketed, and sold the Blended Products as containing only magnesium Glycinate when, in fact, the Blended Products contained a blend of Glycinate and Oxide (which is significantly inferior to and cheaper than Glycinate), and (iii) Albion knew or should have known that the Blended Products did not, in fact, contain only Glycinate and, instead, contained a blend of magnesium Glycinate and an inferior, cheaper ingredient, magnesium Oxide.

69. As fully alleged above, Albion has engaged, and Albion continues to engage, in deceptive acts and practices in violation of Utah Code section 13-11-4(2)(j)(ii) because: (i) in labeling, marketing, and selling the Blended Products to Plaintiff and the Class members, Albion warranted that the Blended Products contained only magnesium Glycinate, yet failed to honor that warranty because the Blended Products in fact contained a blend of Glycinate and Oxide (which is significantly inferior to and cheaper than Glycinate), and (ii) Albion knew or should have known that the Blended Products did not, in fact, contain only Glycinate and, instead, contained a blend of magnesium Glycinate and an inferior, cheaper ingredient, magnesium Oxide.

70. As a direct and proximate result of Albion's improper conduct, Plaintiff and the other members of the Class have suffered damages and ascertainable losses of moneys and/or property in amounts to be determined by the Court or jury, by paying more for the Blended Products than they would have, and/or by purchasing the Blended Products when they would not have done so, had Albion not misrepresented the qualities of the Blended Products as set forth herein.

71. Plaintiff and the Class members seek relief to the fullest extent allowable under Utah Code section 13-11-19, including but not limited to: a declaratory judgment under section

13-11-19(1)(a); an injunction under section 13-11-19(1)(b); and actual damages or $2,000,

whichever is greater, plus court costs under section 13-11-19(2).

72.     Therefore, Plaintiff seeks relief as set forth below.

## FOURTH CAUSE OF ACTION
**(Violation of the Utah Consumer Sales Practices Act, Utah Code § 13-11-1 *et seq.*)**
**(Unconscionable Acts or Practices by Suppliers)**
**(Against Defendant Albion Laboratories, Inc., Only)**

73.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above

as if fully set forth herein.

74.     Plaintiff brings this claim against defendant Albion Laboratories, Inc., only, on

behalf of himself and on behalf of the Class members, for violation of the Utah Consumer Sales

Practices Act, Utah Code § 13-11-1 *et seq.* (the "UCSPA").  Specifically, this claim alleges

Albion violated several provisions of Utah Code section 13-11-5 by engaging in unconscionable

acts or practices.

75.     As alleged above, Plaintiff, the Class members, and Albion are "persons" as the

UCSPA defines that term.

76.     As alleged above, Plaintiff and the Class members, on the one hand, and Albion,

on the other, engaged in "consumer transactions" as the UCSPA defines that term.

77.     As alleged above, Albion is a "supplier" as the UCSPA defines that term.

78.     Under the UCSPA:

> "An unconscionable act or practice by a supplier in connection
> with a consumer transaction violates this act whether it occurs
> before, during, or after the transaction."

Utah Code § 13-11-5(1).

79.     As fully alleged above, Albion has engaged, and Albion continues to engage, in

unconscionable acts or practices in violation of Utah Code section 13-11-5 because: (i) the

Blended Products were the subject of consumer transactions between Plaintiff and the Class members and Albion, (ii) Albion labeled, packaged, advertised, marketed, and sold the Blended Products to Plaintiff and the Class members using representations that the Blended Products contained only magnesium Glycinate when, in fact, the Blended Products contained a blend of Glycinate and Oxide (which is significantly inferior to and cheaper than Glycinate), and thereby Albion engaged in practices that constitute deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and/or concealment, suppression, or omission of material facts in connection with the sale or advertisement of the Blended Products in trade or commerce, and (iii) Albion knew or should have known that the Blended Products did not, in fact, contain only Glycinate and, instead, contained a blend of magnesium Glycinate and an inferior, cheaper ingredient, magnesium Oxide.

80.     As a direct and proximate result of Albion's improper conduct, Plaintiff and the other members of the Class have suffered damages and ascertainable losses of moneys and/or property in amounts to be determined by the Court or jury, by paying more for the Blended Products than they would have, and/or by purchasing the Blended Products when they would not have done so, had Albion not misrepresented the qualities of the Blended Products as set forth herein.

81.     Plaintiff and the Class members seek relief to the fullest extent allowable under Utah Code section 13-11-19, including but not limited to: a declaratory judgment under section 13-11-19(1)(a); an injunction under section 13-11-19(1)(b); and actual damages or $2,000, whichever is greater, plus court costs under section 13-11-19(2).

82.     Therefore, Plaintiff seeks relief as set forth below.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

83.     Plaintiff repeats and re-alleges the allegations contained in above as if fully set forth herein.

84.     By deceiving consumers into paying more for a less expensive and inferior product, Defendants have unjustly enriched themselves at the expense of Plaintiff and the Class. Defendants are therefore required in equity and good conscience to compensate Plaintiff and members of the Class for the damages they have suffered as a result of Defendants' inequitable conduct.

85.     By reason of the foregoing, Defendants are liable to Plaintiff and the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

A.     Certifying this action as a class action as soon as practicable, with the Class as defined above;

B.     On Plaintiff's First Cause of Action, awarding against Defendants the damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, and ordering appropriate injunctive relief, including a prohibition against Defendants' deceptive acts and unfair practices of mislabeling and overcharging for the Product;

C.     On Plaintiff's Second Cause of Action, awarding against Defendants the damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions,

the amount of such damages to be determined at trial;

      D.     Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

      E.     Awarding Plaintiff and the Class such other and further relief as this Court deems

just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury.

Dated:  October 22, 2014

                       Respectfully submitted,

                       SHEPHERD, FINKELMAN, MILLER
                        & SHAH, LLP

                       s/Scott R. Shepherd
                       Scott R. Shepherd (Bar No. 69655)
                       Nathan C. Zipperian (Bar No. 61525)
                       1640 Town Center Circle, Suite 216
                       Weston, FL  33326
                       Tel:  (954) 515-0123
                       Email:  sshepherd@sfmslaw.com
                                nzipperian@sfmslaw.com

                       RICHARD W. MEIROWITZ
                       (*Pro Hac Vice* Forthcoming)
                       10 Muncy Avenue
                       Suite 606
                       West Babylon, New York 11704
                       Tel: (917) 612-3409
                       E-mail: Meirowitz@aol.com

                       REESE RICHMAN LLP
                       (*Pro Hac Vice* Forthcoming)
                       By: Kim E. Richman
                       875 Avenue of the Americas, 18th Floor
                       New York, New York 10001
                       Tel: (212) 643-0500
                       E-mail: krichman@reeserichman.com