**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:14-cv-81294-MIDDLEBROOKS**

GREGORY HOLLIDAY, individually and
on behalf of others similarly situated,

      Plaintiff,

v.

ALBION LABORATORIES, INC.,
VITACOST.COM, INC., and JOHN
DOES 1 through 50,

      Defendants.

_____/

**ORDER GRANTING MOTION TO DISMISS**

THIS CAUSE comes before the Court upon Defendant Vitacost.com, Inc.'s

("Defendant") Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction [DE 24]

("Motion"), filed on December 29, 2014.[1]  Plaintiff filed a Response in Opposition [DE 31]

("Response") on January 15, 2015, to which Defendant filed a Reply [DE 32] ("Reply") on

January 26, 2015.  On February 5, 2015, discovery in this case was stayed pending the Court's

ruling on this Motion to Dismiss. *See* [DE 43].

**I.**      **Background**

On October 22, 2014, Plaintiff Gregory Holliday ("Plaintiff") filed a Class Action

Complaint ("Complaint") on behalf of himself and a class of similarly-situated individuals who

purchased "a blended form of magnesium glycinate ['Glycinate'] and magnesium oxide

---

[1] Defendants Albion Laboratories, Inc. ("Albion") and DrVita, Inc. ("DrVita") joined the Motion on December 29, 2014 and December 30, 2014, respectively, but filed no other papers in support thereof. *See* [DE 25, 26].  On February 19, 2015, DrVita was terminated as a Defendant in this case, pursuant to Plaintiff's notice of voluntary dismissal as to DrVita. *See* [DE 44, 45].

['Oxide']" indirectly from Defendant Albion Laboratories, Inc. ("Albion"), and directly from Defendants Vitacost.com, Inc. ("Vitacost"), and John Does 1 through 50. [DE 1 at 1, Compl.]. Plaintiff alleges that "[i]n an effort to cut costs while maintaining demand, Albion blends Glycinate with Oxide ('the Blended Product') and sells it to the other named Defendants ('re-sellers'), who do not list the inferior magnesium, Oxide, anywhere on their Blended Product labels." [*Id.* at ¶ 3]. As a result, Plaintiff alleges "tens of thousands of consumers have paid a price premium for an inferior form of magnesium . . . ." [*Id.* at ¶ 4]. The Complaint alleges five counts against Defendants under state and federal law: (1) violation of the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.204 *et seq.*; (2) breach of express warranty under Florida common law; (3) violation of the Utah Consumer Sales Practices Act, Utah Code §13-11-1 *et seq.* (deceptive acts or practices by suppliers) against Defendant Albion Laboratories, Inc., only; (4) violation of the Utah Consumer Sales Practices Act, Utah Code §13-11-1 *et seq.* (unconscionable acts or practices by suppliers) against Defendant Albion Laboratories, Inc., only; and (5) unjust enrichment. [Compl.].

Plaintiff alleges that this Court has subject matter jurisdiction over this Class Action Complaint ("Complaint") "pursuant to the Class Action Fairness Act of 2005, under 28 U.S.C. § 1332(d) . . . because: (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs; (2) the named Plaintiff and the Defendants are citizens of different states[2]; and (3) the proposed class has more than 100 members." [DE 1 at ¶ 11] (citing 28 U.S.C. § 1332(d)(2), (5)(b)). Defendants argue, however, that the Court lacks subject matter jurisdiction over this action because "the matter in controversy . . . does not exceed the

---

[2] Although Plaintiff Gregory Holliday and Defendant Vitacost, Inc. are both citizens of Florida, [DE 1 at ¶¶ 5, 8], the Class Action Fairness Act ("CAFA") only requires minimal diversity between parties, which is satisfied in this case. *See* 28 U.S.C. § 1332(d)(2)(A) ("*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant") (emphasis added).

sum or value of $5,000,000, exclusive of interest and costs, as is required by 28 U.S.C. § 1332(d)(2) . . . ." [DE 24 at 1].

## II.    Legal Standard

A Rule 12(b)(1) motion to dismiss challenges the district court's subject matter jurisdiction over a case. *Morrison v. Amway Corp.,* 323 F.3d 920, 925 n.5 (11th Cir. 2003). Because the trial court's jurisdiction is at issue, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (quotation omitted). The Eleventh Circuit has "cautioned, however, that the district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.'" *Morrison v. Amway Corp.,* 323 F. 3d 920, 925 (11th Cir. 2003) (emphasis altered) (citing *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.,* 104 F.3d 1256, 1260 (11th Cir. 1997)).

## III.    Discussion

Plaintiff alleges that Defendant Albion blends Glycinate and Oxide (the "Blended Product") and sells it to the other named Defendants ("re-sellers") who do not list the inferior magnesium, Oxide, anywhere on their Blended Product labels. [Compl. at ¶ 3]. Plaintiff defines the "Blended Product" as any product containing the Blended Magnesium supplement manufactured by Albion and sold to any re-seller, including the named Defendants. [*Id.* at ¶¶ 3, 41]. Using this definition, Plaintiff argues that "tens of thousands of consumers have paid a price

premium for an inferior form of magnesium, thereby padding Defendants' pockets with undeserved profits." [*Id.* at ¶ 4]. Plaintiff seeks redress for such consumers. [*Id.*].

Defendants counter that Plaintiff only has standing to pursue claims involving products Plaintiff alleges he actually purchased. Specifically, Defendants argue that "[a]lthough Plaintiff purports to bring claims on behalf of purchasers of potentially dozens of products sold by potentially dozens of sellers, [Plaintiff] alleges in his Complaint that he purchased only two products – one from Defendant Vitacost and another from Defendant DrVita[3]." [DE 24 at 1-2]. Specifically, Plaintiff alleges he purchased "Vitacost Chelated Magnesium" and "Nature's Lab Magnesium Glycinate." [DE 1 at ¶ 5]. The total amount paid by all putative class members for those two products does not exceed $5,000,000.00.[4]   However, the total amount paid by all putative class members for all products containing the Blended Product sold by all re-sellers likely exceeds $5,000,000.00. Thus, the issue before the Court is whether Plaintiff has standing to bring claims involving products containing the Blended Product that Plaintiff did not purchase.

As Plaintiff notes, district courts in other Circuits have held that "a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not

---

[3] As explained *supra*, DrVita was terminated as a Defendant in this action on February 19, 2015.
[4] Vitacost utilizes an accounting system that captures and records information as to each purchaser of any product sold on Vitacost.com, including the name and address of the purchaser, the products purchased, and the total amount paid for each purchase. [DE 24 Ex. A, Helman Aff. at ¶ 10]. Querying the system, Vitacost found a record of one purchase by Plaintiff – one 133mg bottle of Vitacost Chelated Magnesium, for which Plaintiff paid $8.49. [*Id.* at ¶ 12]. Since the launch of the 133mg of Vitacost Chelated Magnesium on Vitacost.com in 2011, through December 21, 2014, the total amount all Vitacost customers paid for the 133mg of Vitacost Chelated Magnesium was $163,719.61. [*Id.* at ¶ 13]. Vitacost also sells a 400mg bottle of Vitacost Chelated Magnesium, for which all Vitacost customers have paid a total of $574,715.29. [*Id.* at ¶ 14]. Plaintiff also alleges to have purchased Nature's Lab Magnesium Glycinate. [DE 1 at ¶ 5]. Assuming putative class members purchased every bottle of Nature's Lab Magnesium sold by DrVita from retail outlets at the maximum retail price of which DrVita is aware, the total amount paid does not exceed $11,919.48. [DE 24 Ex. B, Gorsek Aff. at ¶ 11].

purchase so long as the products and alleged misrepresentations are substantially similar." [DE 31 at 12] (quoting *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)). However, in *Prado–Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000), the Eleventh Circuit clearly stated that "at least one named class representative [must have] Article III standing to raise each class [claim or] subclaim." *Id.* at 1279. In *Prado–Steiman v. Bush*, the Eleventh Circuit overturned the district court's certification of a single class of developmentally disabled persons challenging Florida's administration of "Home and Community Based Waiver" services for Medicaid-eligible developmentally-disabled persons, because there were "sharp differences amongst class subgroups in the type of conduct alleged and the type of injury suffered." *Id.* at 1281. The Eleventh Circuit highlighted the inextricable link between standing and the typicality of a class representatives' claims[5]:

> It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class. As noted above, typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class.

*Id.* at 1279. *See also Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 (11th Cir. 2001) ("[J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent."); *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("[The] individual injury requirement is not met by alleging that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent."). Although

---

[5] Under Federal Rule of Civil Procedure Rule 23(a)(3), a class representative may only sue on behalf of a class if its "claims or defenses . . . are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

the Eleventh Circuit has not directly confronted the issue before the Court, courts in this District have consistently interpreted *Prado–Steiman*, to preclude a named plaintiff from bringing claims involving products the named plaintiff did not purchase on behalf of a class.

For example, in *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013), the named plaintiff in a consumer class action purchased a TriFlex Vitapack, but sought to bring claims for all TriFlex products. There, the court held:

> Because Plaintiff alleges that he purchased the TriFlex Vitapak, but not other TriFlex products, he has failed to plead that he suffered any injury with regard to products other than the TriFlex Vitapak. *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1353–54 (S.D. Fla. 2012) (standing satisfied for FDUTPA claim where plaintiff purchased product forming basis of claim). Plaintiff therefore cannot establish his Article III standing with respect to any product other than the Vitapak, *see Lujan*, 504 U.S. at 560–61, and cannot raise claims relating to those other products which he did not purchase, *see Prado–Steiman*, 221 F.3d at 1279–80. The claims Plaintiff has standing to bring are therefore limited to those relating to the TriFlex Vitapak.

*Id.*

Similarly, in *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1392 (S.D. Fla. 2014), consumers brought a putative class action against Kashi, a manufacturer of cereals and snacks. At issue were eighty-one Kashi brand cereal products, which plaintiffs alleged contained artificial ingredients, despite being marketed as "all natural." In the complaint, however, plaintiffs alleged that they had only purchased eight of the eighty-one Kashi brand cereal products. The court noted a split among federal courts as to whether class action plaintiffs have standing to bring claims for products they did not purchase:

> [S]ome courts have dismissed similar claims for lack of standing to challenge the non-purchased products, *see* [*Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *4 (S.D. Fla. Sept. 13, 2013)] (citing *Pearson v. Target Corp.*, No. 11–7972, 2012 WL 7761986 (N.D. Ill. Nov. 9, 2012)), while other courts hold that whether a class representative has standing to challenge non-purchased products is a question more appropriate for the class certification stage, *id.* (citing *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 991–92 (E.D. Cal.

2012)), while still other courts have permitted plaintiffs to maintain consumer class actions involving products they did not purchase, *id.* (citing *In re Frito–Lay N. Am., Inc.,* No. 12–2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)).

*Garcia,* 43 F. Supp. 3d at 1392. In reaching its decision, however, the court relied upon cases from and within the Eleventh Circuit to conclude that "in the Eleventh Circuit, a named plaintiff in a consumer class action cannot raise claims relating to those other products which he did not purchase." *Id.* at 1394 (internal quotations omitted). Therefore, the court held that plaintiffs only had standing to bring claims for the eight products the named plaintiffs purchased. *Id.*

Plaintiff relies on *Randolph v. J.M. Smucker Co.,* No. 13-80581-CIV, 2014 WL 1018007 (S.D. Fla. Mar. 14, 2014), for the proposition that there is a "split of district court authority from within this Circuit as to whether Plaintiff can pursue [claims for all products containing the Blended Product]." [DE 31 at 11-12]. However, the court in *Randolph* did not hold that a plaintiff has standing to assert claims as to products she did not purchase. There, a plaintiff asserted claims on behalf of herself and a putative class arising out of J.M. Smucker Co.'s allegedly false labeling of certain Crisco cooking oils as "All Natural." *Id.* at *3. The defendant filed a motion to dismiss for failure to state a claim under Rule 12(b)(6), arguing, *inter alia,* the "plaintiff does not have standing to pursue claims as to Crisco oils she did not purchase." *Id.* at *6. The plaintiff responded that "Defendant's argument is a premature Rule 23 typicality or adequacy argument." *Id.* The court agreed and stated that "the class certification stage is the appropriate time to address [the plaintiff's] standing to assert claims relative to particular products." *Id.* Thus, the court in *Randolph* merely *deferred* considering whether the named plaintiff had standing to assert claims.

The only argument Plaintiff advances to explain why the principles set forth in *Prado-Steiman* should not apply here is that Plaintiff's "injuries are virtually identical [to the class'

injuries stemming from the Blended Products Plaintiff did not purchase] and will require similar proof; this case does not raise the concerns the Eleventh Circuit voiced in Prado-Steiman."[6] [DE 31 at 14].   However, Plaintiff alleges, *inter alia*, that "Defendants' labeling and pricing scheme constitutes a deceptive act because it is a representation, omission, or practice that that is likely to mislead a consumer acting reasonably under the circumstances, to the consumer's detriment." [DE 1 at ¶ 45].  Given that every re-seller has its own labeling and pricing scheme, Plaintiff cannot assume that his injuries are identical to those of putative class members who purchased different products containing the Blended Product from different companies.

In sum, the Court agrees with courts in this District's application of *Prado-Steiman* in similar cases and concludes that a plaintiff cannot establish Article III standing to bring claims for products he did not purchase.  *See Garcia*, 43 F. Supp. 3d at 1394 (citing *Toback*, 2013 WL 5206103, at *5 (citing *Prado-Steiman*, 221 F.3d at 1279–80)).  Accordingly, Plaintiff only has standing to bring claims related to Vitacost Chelated Magnesium and Nature's Lab Magnesium Glycinate. [DE 1 at ¶ 5].  Defendants have presented evidence that the total amount paid by all

---

[6] Plaintiff also relies on *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 729-30 (11th Cir. 2014), for the proposition that it would be premature for the Court to "inquire into and then decide whether Plaintiff's claims relating to 'unpurchased' products have merit." [DE 31 at 11]. In *McDaniel*, a customer brought a putative class action against a bank, claiming that the bank's practice of charging non-account holders a $4 check cashing fee violated the Florida Consumer Collection Practices Act (FCCPA) and other state laws.  The bank appealed the district court's remand of the case to state court for failure to satisfy CAFA's $5,000,000.00 amount-in-controversy requirement.  The Eleventh Circuit vacated the district court's order concluding the district court improperly considered the *likelihood* that plaintiffs would recover $5,000,000.00. Specifically, the Eleventh Circuit stated that "[a]ny inquiry into whether [plaintiffs] *would* actually recover these amounts is unnecessary and inappropriate. For the purposes of establishing jurisdiction, it is enough to show that [they] *could. Id.* at 732.  Unlike the district court in *McDaniel*, here, the Court is not determining the *merits* of any claims, but rather is determining whether Plaintiff has *standing* to assert certain claims, as is appropriate at this stage of the proceedings.  *See, e.g., Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) (holding that federal court cannot proceed to consider claim if plaintiff does not have standing to assert it).

putative class members for those two products does not exceed $5,000,000.00. [DE 24]. Once a party contests the good-faith allegation of the amount in controversy, the party asserting federal court jurisdiction "bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014). Because Plaintiff has failed to meet his burden of showing that the amount in controversy, as limited to Vitacost Chelated Magnesium and Nature's Lab Magnesium Glycinate, exceeds $5,000,000.00, it is hereby,

ORDERED and ADJUDGED that

1. Defendant Vitacost.com, Inc.'s Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction [DE 24] is GRANTED;

2. The Complaint [DE 1] is DISMISSED WITHOUT PREJUDICE; and

3. The Clerk of Court shall CLOSE this case and DENY all pending motions AS MOOT.

SO ORDERED in Chambers in West Palm Beach, Florida, this ___7___ day of June, 2015.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:      Counsel of Record